# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re**

JEFFERY SCOTT YOUNGER,

**Debtor.**

**Case No. 07-00094-JDP**
**Chapter 7**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Howard R. Foley, FOLEY FREEMAN, BORTON, Meridian, Idaho, Attorney for Debtor.

    Kimbell D. Gourley, TROUT JONES GLEDHILL & FUHRMAN, Boise, Idaho, Attorney for Trustee.

    Gary L. Rainsdon, Twin Falls, Idaho, Chapter 7 Trustee.

*Introduction*

Chapter 7[1] Trustee Gary L. Rainsdon ("Trustee") filed an objection to Jeffery Scott Younger's ("Debtor") Claim of Exemption in a savings account containing the proceeds from the sale of Debtor's home.[2]  Docket No. 15.  On May 2, 2007, the Court conducted an evidentiary hearing at which testimony and oral argument were presented.  It thereafter took the issues under advisement.  Having considered the submissions of the parties, the testimony and evidence presented at the hearing, and the arguments of counsel, this Memorandum constitutes the Court's findings of fact and conclusions of law, and disposes of the objection.  Rules 7052; 9014.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005), and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036.

[2] The objection was originally filed by chapter 7 Trustee Lois K. Murphy.  However, on March 20, 2007, a Notice of Appointment of Successor Trustee was filed, naming Gary L. Rainsdon as the Trustee in this case.  Docket No. 24.  Accordingly, the Court will treat the objection as though filed by Mr. Rainsdon.

MEMORANDUM OF DECISION - 2

*Findings of Fact*[3]

In 1986, Debtor and his then-wife purchased a house located in Eagle, Idaho ("Eagle Property"). After they divorced in 2005, Debtor purchased his ex-wife's interest in the Eagle Property and continued to reside there. When he later became engaged to be married, Debtor undertook certain repairs and improvements to the home in contemplation of its sale. He listed the Eagle Property for sale through a realtor in March, 2006. Near the end of July, 2006, Debtor moved some of his belongings out of the Eagle Property to a storage facility, along with other items to his fiancee's home in Melba. He continued to work on the repairs and improvements on the Eagle Property until its sale.

Through the summer and until late September, 2006, Debtor stayed at the Eagle Property only 2-3 nights per week. The rest of the time, he stayed at his fiance's house. On August 2, 2006, the information in the public real estate listing on Debtor's home was changed from "occupied by owner" to "vacant." Ex. 6.

During September 2006, Debtor received an offer to purchase the Eagle Property. At that point, he began in earnest to move his remaining

---

[3] In making its findings of fact, the Court has relied in part upon its opportunity to observe Mr. Younger testify and to assess his demeanor and credibility. The Court has assigned appropriate weight to his testimony in its decision.

MEMORANDUM OF DECISION - 3

belongings out of the Eagle Property.[4]  On November 3, 2006, the sale on the Eagle Property closed.  The new owners allowed Debtor one week to remove the remainder of his belongings.  After payment of closing costs and liens, the sale yielded a net proceed to Debtor of $79,916.37.  Docket No. 18; Ex. 9.  Debtor deposited these funds in a savings account where most of which remain.[5]

On January 22, 2007, Debtor filed a voluntary chapter 7 petition.  Docket No. 1.  In his schedules, he listed no real property.  In his Schedule C, Debtor claimed the monies in the savings account exempt to the extent of $75,000, which represented the proceeds from the sale of his homestead, the Eagle Property.  Docket No. 1; 17.

Trustee objected to Debtor's claim of exemption on the proceeds, contending that Debtor was not entitled to exempt the Eagle Property as his homestead, because, prior to its sale, he had abandoned his homestead.  Therefore, Trustee argues, Debtor is also not entitled to an exemption in the house sale proceeds.

---

[4] On his Statement of Financial Affairs filed in his bankruptcy case, Debtor shows the following dates of occupancy: For the Eagle Property:  1985–06/2006.  For his fiancee's home:  06/2006–present.  Ex. 1.

[5] The Debtor acknowledged that he spent approximately $4,000 of the sale proceeds on "everyday expenses," debt payments and utility payments on the Eagle Property.

MEMORANDUM OF DECISION - 4

### *Conclusions of Law and Disposition*

In a bankruptcy case, individual debtors may exempt certain property from administration by the trustee for the benefit of creditors. § 522(b). Under § 522(b)(2), a state may "opt out" of the exemption scheme provided in the Bankruptcy Code, and if it does, debtors filing for bankruptcy in that state may claim only that property which would be exempt under the law "applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition . . . ." § 522(3)(A). Idaho has opted-out of the federal exemptions. Idaho Code § 11-609. Therefore, in this case, Idaho's exemption law is applicable.

In Idaho, debtors are permitted to claim an exemption in a qualifying homestead. Idaho Code 55-1001, *et seq.*; *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005); *In re Yackley*, 03.1 I.B.C.R. 84, 84 (Bankr. D. Idaho 2003). A homestead exemption is established either automatically, by the debtor's occupation of a home as his or her principal residence, or through the debtor's execution and recordation with the county of an appropriate declaration. Idaho Code § 55-1004(2); *In re Moore*, 269 B.R. 864, 869 (Bankr. D. Idaho 2001). Once properly established, the debtor may exempt up to $100,000 in equity in the home. Idaho Code § 55-1003.

MEMORANDUM OF DECISION - 5

As the objecting party, Trustee bears the burden of proving that Debtor's claim of exemption is not proper. *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005). The validity of the claimed exemption is determined as of the date of the bankruptcy petition filing. *Id.* The homestead exemption statutes are to be liberally construed in favor of the debtor. *In re Kline*, 350 B.R. at 502 (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998)).

It is Trustee's contention that while Debtor established a homestead exemption in the Eagle Property by occupying it as his principal residence, he thereafter abandoned the homestead, prior to filing his bankruptcy petition. Under Idaho law, an abandonment of a homestead may be shown to have occurred in either of two ways. First, a debtor may execute and record a formal declaration indicating an intent to abandon a homestead. Idaho Code § 55-1004. This approach is typically undertaken when a debtor owns two houses, and the debtor wishes to declare one to be the homestead, and to abandon any right to a homestead exemption as to other. Of course, Debtor recorded no declaration here.

In the absence of a declaration, a presumption that an abandonment of a homestead has occurred will arise when the owner vacates the property for a continuous period of six months. Idaho Code § 55-1006. For an absentee owner

MEMORANDUM OF DECISION - 6

intent on retaining the exemption, the existence of this presumption may be avoided by the filing of a declaration of nonabandonment.  *Id*.

The parties agree that the statutory presumption of abandonment is not applicable in this case because Debtor had not vacated the Eagle Property for six continuous months prior to filing his bankruptcy petition.  This is consistent with Debtor's uncontroverted testimony at the hearing, which established that he did not begin to remove any of his belongings from the Eagle Property until late July, 2006, a process that did not conclude until shortly after the sale closed.

However, this Court has interpreted the exemption statutes so that an owner may be deemed to have abandoned a homestead prior to the conclusion of the six-month period.  *Magic Valley Collections & Recovery, Inc. v. Salinas (In re Salinas),* 04.3 I.B.C.R. 110 (Bankr. D. Idaho 2004).  In that case, the Court stated that "an absence of any length, presuming a debtor intended to make another residence his principal residence and abandon a previous one, could constitute an abandonment."  *Id*. at 111; *see also, In re Conley*, 00.1 I.B.C.R. 15, 21 (Bankr. D. Idaho 1999) ("Since physical presence on or absence from undeveloped property is immaterial to a homestead claimed by declaration under Idaho Code § 55-1004(2), there was no risk of *implied abandonment*, and no need for the declaration of nonabandonment.")  (emphasis supplied).

MEMORANDUM OF DECISION - 7

Relying on this case law, Trustee 's theory in this case is that Debtor intended to make another house his homestead, and to abandon the Eagle Property as his principal residence, prior to the time the Eagle Property was sold. Assuming that can be proven, Trustee argues that the funds in Debtor's savings account are not exempt as proceeds from the sale of Debtor's homestead. However, the Court finds that the evidence presented on this issue is, at best, equivocal.

There is some factual support for Trustee's contention that Debtor intended to abandon the Eagle Property as his principal residence before it was sold. First, Debtor's realtor changed the prior characterization of the house from "occupied by owner" to "vacant" beginning on August 2, 2006. Ex. 6. While Debtor argues that the realtor never consulted with him concerning this change in the listing, it may suggest that, by that time, Debtor had moved so many of his belongings out that the home that it evidenced his intent to vacate the house and abandon his homestead.

Second, in Debtor's Statement of Financial Affairs, he stated that he occupied the Eagle Property until June, 2006, at which time he began to reside at his fiancee's home in Melba. Ex. 1. Indeed, Debtor's own testimony at the hearing established that in the summer of 2006, he was staying at the Eagle

MEMORANDUM OF DECISION - 8

Property less than half the time, and that by the end of September 2006, he was only staying there 2 nights per week.

Even so, Debtor explained his progressive move to his fiancee's home in Melba, testifying that he needed time to allow his fiancee's children to "warm up to him," and that during this transition, he continued to remodel the Eagle Property.  He further testified that he had no intention of vacating the Eagle Property entirely until the time it was sold, because to do otherwise would expose the Eagle Property to vandals who might "trash" it.  He also testified that while he moved the majority of his belongings out, he left just enough at the Eagle Property to "keep things going.".  Specifically, Debtor testified that several items were left at the Eagle Property, including a bed, couch, refrigerator, and stove, as well as numerous items in the shed, such as the tools he needed to work on the house.  It was also his opinion that the home would be more appealing to prospective purchasers if it had fewer of his belongings inside.

Debtor testified that he continued the remodeling work on the Eagle Property until it sold, and that despite a clause in the Real Estate Purchase and Sale Agreement which indicated that the new owners were entitled to possession upon closing, he still had items at the home on the closing date, and was thus allowed one week by the new owners in which to finish moving his things.  Ex. L.

MEMORANDUM OF DECISION - 9

Addressing the dates of occupancy listed on the Statement of Financial Affairs, Debtor explained to the Court that he was actually living in both places, Melba and the Eagle Property, during the times in question. He further testified that he found it easier to have all his mail sent to one place, and chose his fiance's Melba house because he intended to move there when the Eagle Property sold, and because his fiancee was handling most of his financial affairs. Finally, Debtor testified that his niece lived at the Eagle Property with him in May and June, 2006.

In *In re Salinas, supra,* this Court considered whether the debtor's approximate one-year absence from her home, during which she lived with her ex-spouse in an attempt at reconciliation, resulted in an abandonment of her homestead. The debtor left her adult sons at the home, and continued to receive her mail there, and from time to time, when the reconciliation was not fairing well, she would return and stay at the home. She also left the bulk of her belongings there.

In *Salinas,* the Court cited several factors to consider when determining whether a debtor has abandoned his or her homestead. Those included "the absence of evidence that a debtor had an actual intent to abandon; an intent not to abandon manifested by the assertion of the exemption in the bankruptcy schedules; and the fact that debtor's current residence was in the

MEMORANDUM OF DECISION - 10

nature of a short-term rental." *Id*. at 112 (citing *Oldemeyer v. Couch-Russel (In re Couch-Russell)*, 03.4 I.B.C.R. 230, 233-34 (Bankr. D. Idaho 2003)).

Here, not only did the Debtor testify that he did not intend to abandon the property prior to its sale, but he also claimed the Eagle Property exempt in his bankruptcy schedules. In addition, *Salinas* cited with approval the holding of *In re Tiffany*, 106 B.R. 213, 214 (Bankr. D. Idaho 1989), for the proposition that a debtor's "temporary absences from his residence, which were occasioned by reasonable causes, were not inconsistent with his right to the homestead claimed so long as he did not intend to abandon the residence as his home." *Salinas*, 04.3 I.B.C.R. at 112.

Debtor's absences of 3-5 days per week from the Eagle Property during the summer and fall of 2006 were, in the Court's view, temporary in nature, occasioned by his reasonable wish to spend time with his fiancee. Debtor claimed the Eagle Property exempt in his schedules, and testified that he did not intend to abandon the Eagle Property as his principal residence prior to its sale. The Court believes Debtor's testimony. Debtor continued to have many of his belongings at the Eagle Property through the date of its sale. As a result, the Court is not persuaded, and does not find, that Debtor intended to abandon the Eagle Property as his homestead prior to its sale. As a result, the Court concludes the proceeds

MEMORANDUM OF DECISION - 11

from the voluntary sale of the homestead on deposit in Debtor's savings account were, as of the date of the bankruptcy filing, exempt pursuant to Idaho Code § 55-1008.

MEMORANDUM OF DECISION - 12

### *Conclusion*

Trustee's objection to Debtor's claim of exemption is denied. Debtor is entitled to retain the Eagle Property sale proceeds as exempt.[6] A separate order will be entered.

Dated: June 22, 2007

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[6] Under the exemption statute, Debtor is allowed one year from the date of sale of the homestead within which to reinvest the proceeds in another homestead, or the exemption will lapse. Idaho Code § 55-1008; *see England v. Golden (In re Golden)*, 789 F.2d 698, 701 (9th Cir. 1986); *Ford v. Konnoff (In re Konnoff),* 356 B.R. 201, 208 (9th Cir. BAP 2006); *Gaughan v. Smith (In re Smith)*, 342 B.R. 801, 808 (9th Cir. BAP 2006).

MEMORANDUM OF DECISION - 13